```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
CHUBB & SON INC., et al.,            |
                                     |   NOT FOR PUBLICATION
               Plaintiffs,           |   MEMORANDUM AND ORDER
                                     |
      - against -                    |   92 CV 4484 (CBA)
                                     |
MICHAEL J. KELLEHER, et al.,         |        FILED
                                     |   IN CLERK'S OFFICE
               Defendants.           |   US DISTRICT COURT E.D.N.Y
------------------------------------------------------X      ★ SEP 21 2006 ★
CHUBB & SON INC., et al.,            |
                                     |            P.M. _____
               Plaintiffs,           |       TIME A.M. _____
                                     |
      - against -                    |   95 CV 0951 (CBA)
                                     |
JAMES KELLEHER, et al.,              |
                                     |
               Defendants.           |
------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE
```

On May 27, 2005, the Court referred these cases to the Honorable Robert M. Levy, United States Magistrate Judge, for a Report and Recommendation ("R&R") regarding judgments the plaintiffs ("Chubb") proposed be entered against defendants Robyn and Barry Gold, Gary Beckerman, G.B. Atlantic Adjusters, Inc., Seymour Baruch, Alan Rosenkranz, Robert Simon and Joseph Rigney. Magistrate Judge Levy issued a thorough and well-reasoned R&R on March 24, 2006 which addressed each of the proposed judgments except that relating to Seymour Baruch, who had in the interim settled with Chubb. Defendants Rosenkranz and Simon have filed objections to the R&R. For the reasons stated below, the Court finds no merit to these objections, and hereby adopts the R&R as the opinion of the Court.

1

## I. Objections by Alan Rosenkranz

The Court has fully considered Alan Rosenkranz's objections to Magistrate Judge Levy's R&Rs and finds them to be insufficiently specific and without merit. Rosenkranz has submitted two sets of objections to Magistrate Judge Levy's R&R. The first filing consists of two paragraphs seeking to incorporate by reference arguments that Rosenkranz made in earlier filings, beginning in November of 2001. The second filing, styled as "amended" objections, adds a third paragraph arguing that Rosenkranz should be entitled to a hearing and further discovery regarding a $190,000 settlement that Chubb reached with an unidentified insurance broker.

### A. Timeliness

Although Rosenkranz's initial objections were timely filed, his "amended objections" were not. Magistrate Judge Levy issued his R&R on March 24, 2006. Under the Federal Rules of Civil Procedure, objections were due no later than April 12, 2006. See Fed. R. Civ. P. 6(a), (e); Fed. R. Civ. P. 72(b). Rosenkranz's initial objections are dated March 30, 2006 and were filed on April 3, 2006. Thus, these objections were timely filed. See 28 U.S.C. § 636(b)(1)(C) (providing party may file objections within ten days of issuance of R&R). Rosenkranz's amended objections, however, are dated April 19, 2006, a week after the period to file objections had expired. Moreover, the amended objections were not filed with the Court until June 14, 2006, after an inquiry by chambers. The Court was aware that the amended objections existed only because Chubb filed a letter with the Court on April 27, 2006 objecting to them as untimely filed. The Court therefore concludes that Rosenkranz's amended objections were not timely filed, and declines to consider the arguments contained therein.

B.   Vagueness

Rosenkranz's "objections" consist only of two short paragraphs seeking to reassert and incorporate by reference arguments that Rosenkranz has made throughout the litigation, beginning in November of 2001. These paragraphs read, in their entirety:

> Defendant Alan Rosenkranz pursuant to 28 U.S.C. § 636(b)(1) hereby objects to the Report and Recommendations of Honorable Robert M. Levy, United States Magistrate Judge dated March 24, 2006. The basis upon which said objections are made, are [sic] outlined in the letters of defendant Alan Rosenkranz's counsel Katz & Kreinces dated November 14, 2001, January 7, 2003 and October 25, 2005 referred to therein. Defendant adopts the grounds set forth, which are summarized as follows:
> A. The Report and Recommendation refused to allow the application of New York General Obligations Law § 15-108 and an apportionment and reduction of liability and damages based upon the equitable share of the liability on the part of joint tortfeasors who have been released by the plaintiff. Plaintiff has entered into settlement agreements with various joint tortfeasors and issued General Releases to them, many of which were not divulged to defendant Rosenkranz until recently and long after the Court's finding of summary judgment on September 28, 2001. Although not pleaded in its answer filed in 1995 before any of the settlements occurred, such an amendment if necessary is liberally granted by the Courts and should have been granted herein.

(Rosenkranz Objections 1-2, March 30, 2006.)

These "objections" are not sufficiently specific to require *de novo* review of any issues by this Court. 28 U.S.C. § 636(b)(1)(C) provides that, within ten days of being served with a copy of a magistrate judge's report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. Federal Rule of Civil Procedure 72(b) similarly states that, when a magistrate judge has issued a report and recommendation regarding a dispositive matter, a party may, "[w]ithin 10 days after being

3

served with a copy of the recommended disposition,...serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). The statute and the Rule both require the district judge to whom the matter has been assigned to conduct a *de novo* review of any portion of the R&R to which objections have been filed, but are silent with regard to the review of portions to which no objection has been filed. Id. The Second Circuit has held that failure to file timely objections to an R&R waives the right to further judicial review thereof. Frank v. Johnson, 968 F.2d 298, 299 (2d Cir. 1992); Wesolek v. Canadair, Ltd., 838 F.2d 55, 58 (2d Cir. 1988).

In this case, rather than articulate specific objections to alleged defects in the R&Rs, Rosenkranz has referred the Court in the most general way to three of his earlier filings and provided only a disjointed summary of just one of the arguments made therein. Those filings cannot accurately be labeled "objections" to an R&R which they predate. Moreover, Rosenkranz's blanket reassertion of the arguments they contain fails to direct the Court's attention to any specific error in Magistrate Judge Levy's R&R, which addressed and rejected the arguments. Other courts have rejected similar attempts to file "objections" which merely incorporate by reference arguments that had been presented earlier. See, e.g., Morrison v. Parker, 90 F. Supp. 2d 876, 877 (W.D. Mich. 2000) ("Plaintiff's general, nonspecific objections, purporting to incorporate by reference their earlier brief, are tantamount to no objection at all and do not warrant further review."); Casas Office Machines, Inc. v. Mita Copystar Machines, Inc., 847 F. Supp. 981, 985 (D.P.R. 1993) (rejecting defendant's objections to R&R because defendant's "mere recitation of the existence of previous submissions does not suffice to amount to a specific objection") vacated on other grounds at 42 F.3d 668 (1st Cir. 1994); see also Kelly v. Withrow, 25 F.3d 363, 366 (6th Cir. 1994) (finding incorporation by reference of other

4

documents in objections to be inadvisable as general rule, but permissible when district court acquiesced); see also Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) ("It is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge."). Cf. United States v. Mertz, 376 U.S. 192, 199 (1964) (stating "litigants have a responsibility to assist the process by specifying their objections to instructions, by offering alternate ones, and by making their timely objections to the report in specific, rather than in generalized form, as required by equity practice," in context of reports under Rules 53 and 71A). The Court agrees with those courts and holds that a party does not state a valid objection to an R&R when it merely incorporates by reference filings that predate the R&R and provides a fragmentary and incomplete summary of one of several arguments presented in those filings. The objection in such a case is simply too vague to direct adequately the Court's attention to the issues needing review.

C.  Merits

In any event, to the extent that Rosenkranz's basis for objecting to the R&R is his continued belief that he is entitled to a set-off pursuant to New York General Obligations Law § 15–108(a) based upon the relative degrees of fault of the various parties, the objection is without merit. Section 15-108(a) provides that, when a plaintiff settles with a defendant in a tort action with multiple defendants, any eventual verdict against the nonsettling defendants shall be reduced by the greater of (1) the amount stipulated as consideration for the release, (2) the amount actually paid for the release, or (3) the settling defendant's equitable liability. N.Y. Gen. Oblig. § 15-108(a). Rosenkranz evidently believes that his codefendants' equitable share of the

damages exceeds the amount they have actually paid in settlement, and that the judgment against him should be reduced accordingly under the third prong of § 15-108(a). This argument was presented to Magistrate Judge Levy and is fully and capably addressed in his R&R. The Court has little to add to the discussion beyond what is already in the record, including the issue's thorough treatment in Magistrate Judge Levy's R&R and in this Court's Order of September 28, 2001. That Order, which granted partial summary judgment against Rosenkranz, specifically held that set-offs based on settlement agreements would be calculated according to the "one satisfaction rule" rather than the "proportionate responsibility rule" of McDermott, Inc. v. AmClyde, 511 U.S. 202 (1994). As Magistrate Judge Levy notes in his R&R, Rosenkranz's current invocation of § 15–108(a) is a thinly-veiled attempt to revisit that determination, and is without merit. The protection of §15-108(a) is an affirmative defense and is waived if not pled in the defendant's answer. Whalen v. Kawasaki Motors Corp., 92 N.Y.2d 288, 293 (N.Y. 1998); see Fed. R. Civ. P. 8(c). Despite the fact that Chubb's settlements with certain defendants appeared in the record as early as 1997, Rosenkranz did not plead § 15-108(a) in his answer, which was filed in late 1998. Nor did Rosenkranz raise § 15-108(a) in opposition to Chubb's motion for summary judgment. Rosenkranz thus has waived the protections of § 15-108(a) which he seeks to assert.

Rosenkranz argues that he "should have been" allowed to amend his answer[1] to plead § 15-108(a) even after the Court granted summary judgment because the Appellate Division in Whalen allowed a nonsettling defendant to amend his answer to plead § 15-108(a) even after a jury had returned a verdict, and was affirmed in this decision by the New York Court of Appeals. See Whalen, 92 N.Y.2d at 293. Whalen, however, does not support Rosenkranz's argument. In

---

[1] The Court notes that Rosenkranz has never actually filed a motion to amend his Answer, despite his assertion that he "should have been" allowed to make such an amendment.

6

Whalen, the trial court denied the non-settling defendant's post-verdict motion to amend its answer to assert § 15-108 as an affirmative defense. The Appellate Division held that the trial court should have granted the motion to amend because it was made shortly after the settlement was reached and because application of the statute did not require proof at trial. Whalen v. Kawasaki Motors Corp., 662 N.Y.S.2d 339, 340 (N.Y. App. Div. 1997). In allowing this late amendment, however, the Appellate Division specifically held that the third prong of § 15-108(a) — the prong Rosenkranz seeks to assert here — was not available to the non-settling defendant because he had failed to seek a jury determination of the settling defendant's equitable share of damages, and had obtained only a determination of comparative fault as between himself and the plaintiff. Id. ("A nonsettling tortfeasor's failure...to seek an apportionment of fault by the jury between the settling and nonsettling tortfeasors...constitutes waiver of the settling tortfeasor's right to reduction of the verdict based on an apportionment of fault, but not based on the amount of the settlement."). The Court of Appeals affirmed, and specifically held that by "failing to seek apportionment against [settling defendant] Kawasaki, [non-settling defendant] Robinson foreclosed any possibility of the jury determining Kawasaki's equitable share of the fault, and in that respect foreclosed use of that prong of the statute's benefits." Whalen, 92 N.Y.2d at 292. Here, the only defenses that Rosenkranz asserted prior to the Court's grant of summary judgment were the statute of limitations and comparative fault as between himself and Chubb. He did not seek an apportionment of fault as between himself and any other defendants, or assert § 15-108(a) in any way, until after summary judgment had been granted and his liability established. Thus, Rosenkranz would be entitled under Whalen to assert the provisions of § 15-108(a) which reduce a judgment by the amount of other settlements, but would not be entitled to seek a reduction in judgment based on apportionment of fault. The

7

Court's application of the "one satisfaction rule" thus comports with <u>Whalen</u> and has the effect of extending to Rosenkranz all of the protections of § 15-108(a) to which he is entitled: a reduction in the judgment against him to reflect other relevant settlements. For these reasons, as well as those presented in Magistrate Judge Levy's R&R and this Court's Order of September 28, 2001, the Court finds there to be no merit in the argument that Rosenkranz is entitled to a set-off based upon the relative degrees of fault of the various parties pursuant to the third prong of New York General Obligations Law § 15–108(a).

Finally, the Court has considered each of the other arguments asserted in the previous filings which Rosenkranz referenced in his Objections, and concludes that any objection based on those arguments would be without merit.

## II. Objections of Robert Simon

Like Rosenkranz, *pro se* defendant Robert M. Simon has filed objections that attempt to incorporate by reference arguments from a filing that predates Magistrate Judge Levy's R&R. On November 11, 2005, Simon submitted a letter to Magistrate Judge Levy which raised objections to the method the plaintiffs had used to calculate damages in their filing of October 14, 2005. Simon's current objections assert that Magistrate Judge Levy's R&R acknowledges but does not address the arguments made in that letter. In response, Chubb argues that Simon's objections should be ignored because they rest on objections that were untimely filed when first presented, and that Simon's objections fail on their merits.

### A. Vagueness and Timeliness

As an initial matter, Simon's filing shares the ambiguity which doomed Rosenkranz's objections. <u>See</u> Part I.A, <u>supra</u>. Simon's "Objections" consist of a single paragraph that

8

primarily directs the Court to a previous filing, and only a few lines of which convey any substantive argument. Most of these lines reiterate Simon's belief that he is entitled to review the settlement agreement between Chubb and Robert Greenberg. The remaining lines are exceedingly vague:

> My letter [of November 14, 2005] specifically raises issues not to the method of [u]sing proportionality in applying credits from settlement proceeds but to the application [o]f those credits in this case. As noted, credits being given to other claims in which full [r]estitution may have already been received by plaintiff from other co-defendants in those [c]ases.

(Objection of Robert M. Simon Pro Se, April 5, 2006.) It is difficult, if not impossible, to determine from these sentences the precise nature of Simon's objection to Magistrate Judge Levy's R&R, even when Simon is accorded the deference he is due because he acts *pro se*. Cf. Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").

Simon's Objections are clearer if the November 14, 2005 letter which Simon references is considered. It is true, as Chubb argues, that this letter was untimely when first filed,[2] and that

---

[2] Magistrate Judge Levy issued an order on September 15, 2005 requiring Chubb to produce for Simon's review copies of settlement agreements with other defendants, and requiring Simon to file any response within three weeks of receipt thereof. Chubb served its response to that motion on October 14, 2005, by mail. Accordingly, Simon should have received the documents by October 17, 2005 and should have filed his response by November 7, 2005. Instead, Simon did not mail his response until November 14, 2005, a week later, offering only the explanation that Chubb's October 14, 2005 mailing was "accessed on November 2, 2005 after the effects of hurricane Wilma." (Letter, Simon to Court, postmarked Nov. 14, 2005.) However, according to the National Weather Service and the United States Geological Survey, Hurricane Wilma did not strike the region of Florida where Simon receives his mail until October 24, 2005, ten days after Chubb served its documents. See http://www.nhc.noaa.gov/ HAW2/english/history.shtml; http://coastal.er.usgs.gov/hurricanes/wilma; see also Mamiye Bros. v. Barber S.S. Lines, Inc., 241 F. Supp. 99, 116 (S.D.N.Y. 1965) (taking judicial notice of New York Times reports of forecasts by United States Weather Bureau). Therefore, Hurricane Wilma may not reasonably be blamed for Simon's failure to "access" the filing which he should have received at least a week before the hurricane arrived and a full four weeks before he mailed his response. Moreover, even if the hurricane did prevent Simon from receiving Chubb's mailing, he could

9

district courts generally will refuse to consider arguments that could have been, but were not, presented to the magistrate judge. See, e.g., Baker v. Ace Advertisers' Serv., Inc., 153 F.R.D. 38, 43 (S.D.N.Y. 1992) ("The Court is not required to consider these objections because a party is not entitled as of right to a de novo review by the judge of an argument never seasonably raised before the magistrate." (quotation marks and brackets omitted)); see also Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996) (holding that district court did not err in refusing to consider claim not raised before magistrate); Cupit v. Whitley, 28 F.3d 532, 535 & n.5 (5th Cir. 1994) (holding party waived argument first raised after magistrate issued R&R); Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 990–91 (1st Cir. 1988) ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate."). The Court declines to impose that rule in this case, however, because it is not clear that Magistrate Judge Levy rejected it as improperly filed. (See R&R 3, March 24, 2006 (citing Nov. 14, 2005 letter among supplemental submissions by parties).) Out of deference to Simon's *pro se* status, the Court construes the ambiguity in his favor and assumes that Magistrate Judge Levy considered the argument in his filing, and that this Court therefore should not consider the arguments to be waived.

C. Merits

Simon's objections fail on their merits. The November 11, 2005 letter states, in relevant part:

> The first comment I wish to make relates to the allocation of credits from the James Kelleher and Berson settlements using the proportionality method. Many of the parties and claims are

---

have requested an extension of the time in which to file his response well in advance of the November 7, 2005 filing deadline.

10

> interrelated and can't be viewed in isolation. For instance, approximately $100,000 of the Kelleher payment of $350,000 is being allocated to Irving Tanning . . . . It is my understanding that Arnold Saltzmann . . . as part of his agreement with the government agreed to pay back the full amount of the Irving Tanning claim. However, we do not have a copy of this settlement agreement[.] In addition, the settlement with the Newport Group . . . allocates approximately $220,000 to the Irving Tanning claim. It is possible that part of the 6.5 million dollars received from Michael Kelleher includes payment for Irving Tanning; the details of which we do not have. As a result, eventhough [sic] the allocation was proportionate among the claims appearing in the James Kelleher agreement, as applied in this case it was not. The money allocated to Irving Tanning should be reallocated to the remaining claims. . . . It is my understanding that as part of his agreement with the government Burton Berson agreed to pay back the full amount of the claim payment which may have included interest. As a result, I question whether any of the $1,300,00 of the Berson settlement . . . [s]hould be allocated to the Burton claim.

(Letter, Simon to Court, postmarked Nov. 14, 2005.) As the Court understands this argument, Simon believes that the Court should attribute more of his coconspirators' settlement or restitution payments to the claims for which Simon is liable because Chubb might otherwise receive a windfall on certain other claims for which Chubb might have already received full restitution. Specifically, Simon speculates that Arnold Saltzman may have agreed with the government as part of his guilty plea in a criminal case to pay full restitution on the Irving Tanning claim. Simon also speculates that part of Michael Kelleher's settlement may have included money for the Tanning claim. Accordingly, Simon argues, the portion of the settlement payments by James Kelleher and the Newport Group which Magistrate Judge Levy implicitly allocated to the Tanning claim should instead be allocated among the other claims with which Kelleher and Newport were involved, including claims on which Simon was found liable. Similarly, Simon speculates that Burton Berson might have agreed with the government to pay full restitution for the claim he filed. If true, Simon argues, none of Seymour Berson's

settlement payments should be attributed to Burton's claim, and a proportionally higher amount of Seymour's settlement should be credited to the claims on which Simon is liable. Upon careful consideration of the record and relevant law, the Court finds this argument to be without merit.

First of all, Simon cites no authority for the proposition that his liability should be reduced because of restitution or settlement payments made on claims for which he has no liability. Simon's method would consume significant judicial resources and would frustrate the purpose of settlement, as it would force the Court to decide issues relating to claims in which all the parties have already settled. For example, the Court would have to determine whether a settling defendant would have been immune from damages on any of the claims covered by his settlement because other defendants had already paid full restitution or had already settled their liability on those claims. The Court would also have to determine the amount of damages for which each settling defendant might have been liable on each settled claim and the amount of each settlement payment that should be attributed to each claim. The very purpose of settlement is to avoid having to litigate whether a defendant is liable, on which claims he is liable, and the extent of his liability. Allowing remaining defendants to litigate those issues after other defendants have already settled would be frustrate that purpose. Finally, adopting Simon's method would discourage settlement. Defendants considering settlement would have an incentive to wait until any co-defendant facing criminal charges in a related action had resolved his case and had paid restitution, so as to reduce his own possible liability.

D. Greenberg Settlement

Simon also argues that he should be allowed to review the settlement agreement between Chubb and Robert Greenberg, who is a codefendant of Simon's on the Techknits claim. In its October 14, 2005 submission, Chubb informed the Court that the settlement was "awaiting

approval from the Bankruptcy Court" and that Chubb had not yet received any settlement payments from Robert Greenberg. Chubb reaffirmed both of those statements in its April 20, 2006 response to Simon's objections. Simon therefore is not yet entitled to a reduction in the judgment against him because of any settlement with Greenberg.

### III. Conclusion

For the reasons stated above, and upon careful consideration of Magistrate Judge Levy's thorough R&R and each of the objections that have been filed thereto, the Court adopts the R&R as the opinion of the Court. Judgment is to be entered against (1) Robyn and Barry Gold in the amount of $279,418.64; (2) Gary Beckerman in the amount of $844,941.83; (3) G.B. Atlantic Adjusters, Inc. in the amount of $438,778.53; (4) Alan Rosenkranz in the amount of $668,666.85; (5) Robert Simon in the amount of $3,094,875.59; and (6) Joseph Rigney in the amount of $1,949,186.76. In addition, the Court awards prejudgment interest from October 1, 2005 through the date of entry of judgment at a rate of 9% per annum.

SO ORDERED.

Dated: Brooklyn, New York
September 20, 2006

/s/
_____
Carol Bagley Amon
United States District Judge